FILED UNDER SEAL

FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

2025 NOV -7 P 3: 11

| | | |
|---|---|---|
| Xu'e Chen, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. ___3:25CV932___ |
| | ) | |
| The Unincorporated Associations | ) | |
| Identified in Schedule A, | ) | |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT**

Plaintiff Xu'e Chen ("Plaintiff") alleges as follows:

**NATURE OF THIS ACTION**

1.      This is an action ("Action") for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code and for trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The trade dress at issue is unregistered.

2.      Plaintiff brings this Action for infringement of one or more claims of U.S. Design Patent Nos. D1,056,611 ("the 'D611 Patent") and D1,080,289 ("the 'D289 Patent") (collectively the "Asserted Patents"), both of which are entitled "Meat Grinder." True and correct copies of the 'D611 Patent and 'D289 Patent are attached as Exhibits A and B, respectively. Plaintiff also brings this Action for trade dress infringement.

**THE PARTIES**

3.      Plaintiff is an individual residing in Guandong, the People's Republic of China ("China").

4.      Plaintiff is the inventor and sole owner of the Asserted Patents.

1

**FILED UNDER SEAL**

5. Plaintiff has the exclusive right to license, enforce, and collect all past damages for infringement of the Asserted Patents.

6. Plaintiff has standing to sue for infringement of the Asserted Patents.

7. Plaintiff sells products covered by the Asserted Patents ("Plaintiff's Covered Products") through her webstores hosted on the Amazon.com retail platform ("Amazon Retail Platform") to consumers in the United States, including consumers in the Commonwealth of Virginia ("Virginia").

8. The Defendants are identified on Schedule A. On information and belief, each Defendant is a company, entity, or business association residing in China. Schedule A lists each Defendants' listed store name and Amazon Seller ID, which each Defendant uses to operate their respective webstores ("Accused Webstore").

9. On information and belief, each Defendant may, intentionally or otherwise, conceal its identity and the full scope of its infringing operations to thwart patent owners, such as Plaintiff, from learning each Defendant's true identity and the exact interworking of each Defendant's infringing activities.

10. On information and belief, the Amazon Retail Platform does not require the true names and contact information of sellers to be posted publicly, and sellers may set up accounts using fictitious names. Accordingly, on information and belief, the public seller names used on Amazon Retail Platform are unreliable. On information and belief, many sellers on the Amazon Retail Platform use multiple fictitious names and addresses to regularly create new stores at least on the Amazon.com platform. On information and belief, this is a common practice on the Amazon Retail Platform to enable sellers to evade enforcement efforts.

11. The true name and identity of each Defendant is currently unknown.

**FILED UNDER SEAL**

12.     Each Defendant sells products that infringe one or more of the Asserted Patents ("Accused Products") on the Amazon Retail Platform to consumers in the United States and in Virginia through interstate commerce. Each Defendant conducts its operations through its Accused Webstore hosted on the Amazon Retail Platform.

13.     Defendants' Accused Products are in direct competition with Plaintiff's Covered Products.

14.     Defendants target consumers in the United States, including Virginia residents, and have offered to sell and, on information and belief, have sold and continues to sell Accused Products that practice the claims of the Asserted Patents to consumers within the United States, including within Virginia and the United States District Court for the Eastern District of Virginia ("District"). For example, residents of the District may purchase the Accused Products using their Amazon Prime memberships and have the Accused Products delivered by an Amazon Prime delivery vehicle in this District.

15.     Through their operation of their respective Accused Webstores, Defendants engages in the importation, offer for sale, and sale of Accused Products.

**JURISDICTION AND VENUE**

16.     Plaintiff's claims for patent infringement against Defendants arise under the patent laws of the United States including 35 U.S.C. §§ 271 and 281.

17.     This Court has original and exclusive subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a).

18.     This Court has personal jurisdiction over Defendants because they have supplied their products (including the Accused Products) into commerce in the United States and this District and pursuant to the Federal Long Arm Rule, Fed. R. Civ. P. 4(k)(2).

3

**FILED UNDER SEAL**

19.     This Court has personal jurisdiction over Defendants pursuant to Va. Code Ann.§ 8.01-328.1 (1950). Personal jurisdiction exists over Defendants because they have minimum contacts with Virginia as a result of business regularly conducted within Virginia and within this District, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Virginia and this District. This Court has personal jurisdiction over each Defendant, in part, because each Defendant does continuous and systematic business in Virginia including by providing Accused Products and services to the residents Virginia through fully interactive Accused Webstore allows Accused Products to be purchased by Virginia residents and shipped to addresses in Virginia. Each Defendant knew the Accused Products would be used within Virginia, and has solicited business from the residents of Virginia using the Amazon Retail Platform.

20.     Venue is proper in this District under 28 U.S.C. § 1391 because each Defendant resides outside the United States and because each is subject to personal jurisdiction.

21.     Each Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

## PLAINTIFF AND BACKGROUND

22.     Plaintiff owns and operates a trading company located in Guangdong, China that specializes in kitchen tools. Plaintiff's company outsources its production to experienced and qualified original equipment manufacturing ("OEM") suppliers.

23.     Plaintiff's company focuses on creative product design, functional development, and quality control. In addition to Plaintiff's Covered Products, Plaintiff's company also independently develops and sells a variety of other products, including refrigerator storage racks and multi-functional kitchen storage supplies. Despite being a relatively-small company,

4

**FILED UNDER SEAL**

Plaintiff's company adheres to its design principles and strives to continuously improve and innovate its products. Plaintiff has applied for and obtained multiple patents to protect her company's products.

24.    Plaintiff's Covered Products are the result of Plaintiff's company's significant investment of funds and effort to develop Plaintiff's Covered Products, including performing in-depth market research, designing the Plaintiff's Covered Products' appearance and functionality, refining its technology to address customer feedback, creating multiple sets of plastic-injection molds, conducting repeated proofing tests using these plastic-injection molds, and optimizing the structure and material selection. During the production process, Plaintiff's company rigorously managed the design process to ensure that Plaintiff's Covered Products met expectations for durability, safety, and user experience.

25.    Plaintiff's Covered Products are meat grinders with aspects advantageous to consumers including (i) an inner shred structure and strong anti-slip strip; (ii) built-in plastic teeth that cover the whole area which can tightly clamp the food; (iii) a lid has extra spikes on the edge, which help meat gather the shredded meat in the middle, cutting it evenly; and (iv) construction from high-quality food grade material, BPA free and heat resistance.

26.    Out of consideration for aesthetics, Plaintiff created multiple attractive designs that include one or more of the following: an approximate flower-like shape (when viewed in the planform view) that consists of a continuous, undulating curve around the perimeter of the rim of the base, a flange that extends in the outward radial direction with extending portions forming petal-like lobes, two or more raised areas on the lobes where the raised areas are running in a circumferential direction and are approximately parallel to each other, two approximately circular handles diametrically opposed to each other near the edge of the cover and extending vertically,

5

FILED UNDER SEAL

indentations on the perimeter of the handles, and a relatively flat top of the cover ("Design Elements"). Plaintiff believed that consumers could recognize and remember its designs as unique for a meat shredder by providing a visually pleasing appearance. Plaintiff selected the Design Elements from infinite designs. For instance, she cleverly integrated the base with the roughly flower-like shape (when viewed in the planform view) into the functional features of the meat shredder, which stands out to consumers among the many designs for meat shredders. This type of product has high memory points and recognition by consumers. For example, after browsing the product, a consumer can quickly remember this meat shredder design because of its unique design and shape. The patented meat shredder has a simple and elegant appearance, full of beauty, and facilitates the shredding of meat by consumers.

27. To protect Plaintiff's Covered Products, Plaintiff filed patent applications in the United States Patent and Trademark Office that led to the issuance of the Asserted Patents. Plaintiff's Covered Products are covered by the claims of the Asserted Patents and are commercial embodiments of the Asserted Patents.

28. Plaintiff's company initially sold Plaintiff's Covered Products in the United States on the Amazon Retail Platform through her webstores. Since their first sale, Plaintiff's Covered Products have received positive customer reviews and received significant orders, with sales steadily increasing. Plaintiff's Covered Products quickly gained market acceptance becoming a favorite among consumers in Europe and the United States on the Amazon Retail Platform. Plaintiff's Covered Products have captured a significant market share in their category, and their brand awareness continues to grow. Among the purchasing public, Plaintiff's Covered Products are recognizable as such and are known for their distinctive design. This design is well recognized by consumers.

FILED UNDER SEAL

29. Plaintiff's Covered Products are one of Plaintiff's company's core products. Plaintiff's Covered Products have accumulated a large number of positive reviews on the Amazon Retail Platform. Plaintiff's Covered Products have maintained a high ranking in the search results of multiple core keywords. Although Plaintiff's company also deal in other kitchen products, the sales and profits of Plaintiff's Covered Products account for a large proportion of the Plaintiff's company's overall business, which plays a key role in the company's business development.

30. Plaintiff and her company invest in advertising on Amazon, including Sponsored Ads, Store operations, and Amazon Delivery Service Partner ads to drive traffic. At the same time, Plaintiff and her company promote Plaintiff's Covered Products through social media platforms such as Facebook and Instagram, and encourage influencers to showcase and recommend products. In addition, multiple kitchen utensil blogs have spontaneously introduced and recommended Plaintiff's Covered Products. On information and belief, this reflects the influence of the Plaintiff's Covered Products in the United States and has helped attract more potential customers.

31. Since launching Plaintiff's Covered Products, Plaintiff and her company identified a number of counterfeit products on the Amazon Retail Platform, including the Accused Products. As the sales of Accused Products continued to increase, Plaintiff's Covered Products' product ranking and sales on the Amazon Retail Platform have declined significantly, and the Plaintiff's company has had to deal with excess inventory. Because of this decline in sales, earlier this year, Plaintiff's company had to move some of its inventory of Plaintiff's Covered Products to third-party overseas warehouses to reduce Amazon storage fees. Plaintiff and her company were also forced to lower prices of Plaintiff's Covered Products to remain competitive. The additional overseas warehousing expenses and reduced prices have led to significant reductions in the overall store profit margin and also eroded Plaintiff's company customer base. On information and belief,

**FILED UNDER SEAL**

Defendants have flooded the online market and have irreparably damaged, and are continuing to irreparably damage, Plaintiff.

32.    Plaintiff's company maintains quality control standards for Plaintiff's Covered Products. Plaintiff's Covered Products are only sold directly by Plaintiff to consumers through Plaintiff's company's webstores on the Amazon Retail Platform. Prior to the flood of Accused Products entering the US market, sales of Plaintiff's Covered Products via her company's webstores represented a significant portion of Plaintiff's business.

33.    Plaintiff and her company have filed intellectual property violation reports with the Amazon Retail Platform, and also sent infringement warning emails to sellers who were infringing, clearly informing them of the Asserted Patents and the fact that they were infringing. Some of the sellers that Plaintiff contacted did not stop their sales, but continued to expand their sales, causing continuous and aggravated damage to Plaintiff's company's business. For other sellers that agreed to stop selling, some of these sellers, on information and belief, have created new webstores on the Amazon Retail Platform using different webstore names and under a false or fictious seller name. Based on these prior dealings and on information and belief, Defendants will engage in identical and/or similar tactics if Defendants learn of this Action before being enjoined.

34.    Amazon.com provides the following information to its sellers, including Defendants:

8

FILED UNDER SEAL

# How does Amazon pay sellers?

Amazon pays sellers via Automated Clearing House or electronic funds transfer. When you have a positive balance, Amazon initiates a transfer on a scheduled payout date and sends the funds in a single disbursement to the bank account on file in your Amazon payment settings. In order to get paid and keep business operations running smoothly, Amazon sellers provide bank account and credit or debit card information as part of the seller registration process.

( **Learn more in our seller registration guide** )

## What's the Amazon seller payment schedule?

In general, Amazon settles seller accounts every two weeks. We take your beginning balance, add your sales, subtract expenses, and adjust for any refunds, then transfer payment to you after withholding an amount in reserve. The reserved amount becomes the beginning balance for your next settlement period.

It's important to note that after Amazon initiates a payment, it can take up to five business days for the funds to appear in your bank account.

\* \* \*

## When will I get my next disbursement, and how much will it be?

To check the scheduled date for your next disbursement, scroll to the bottom of the Statement View page of the Payments Dashboard. Here you'll find the date that Amazon will attempt to initiate your next disbursement, along with the estimated amount.

\* \* \*

9

FILED UNDER SEAL

# 3 ways to get paid faster or more conveniently

## 1. Amazon Express Payout

Eligible sellers in Amazon's US store can get paid faster with Amazon Express Payout. Enroll to receive payouts within 24 hours.

## 2. Seller Wallet

With competitive exchange rates and no hidden costs, Seller Wallet can help sellers manage funds, make transfers to bank accounts around the world, and convert funds to over 20 currencies.

## 3. Amazon Currency Converter for Sellers

Amazon Currency Converter for Sellers can help you get paid in your local currency for sales you make internationally. Costs decrease as your business grows, with discounted pricing for higher volumes.

https://sell.amazon.com/blog/amazon-seller-payments (accessed Sept. 12, 2025).

35.    On information and belief, Amazon.com keeps money from the Defendants' sales of Accused Products and disburses money to each Defendant at various times through Automated Clearing House, electronic funds transfer, Amazon Express Payout, Seller Wallet, Amazon Currency Converter for Sellers, and/or other means to bank account(s) associated with each Defendant.

36.    On information and belief, Amazon.com has the ability to stop such disbursements to its sellers, including Defendants.

37.    On information and belief, except for the above money held by Amazon.com, Defendants do not have any other assets in the United States.

10

**FILED UNDER SEAL**

38.    In the context of registering a new seller account, Amazon.com states that "in many cases you'll be able to complete the process in just a few hours." https://sell.amazon.com/sell/registration-guide (accessed Sept. 12, 2025).

39.    On information and belief, if Defendants' Accused Webstores and sales of Accused Products are enjoined and if each Defendant become aware of the injunction, it would take approximately 2-3 hours to complete a new webstore registration and upload product details, which would enable each Defendant to sell Accused Products (or nearly identical products) under a new ASIN.

## THE ACCUSED PRODUCTS

40.    Defendants have infringed the claims of the Asserted Patents through the sale, offer for sale, advertisement, importation, shipment, distribution, and/or use of Accused Products.

41.    On information and belief, the Accused Products are manufactured in China. On information and belief, Defendants have profited, and are profiting, from the sales of Accused Products. On information and belief, each Defendants holds most of its monetary assets in offshore accounts. Defendants are selling its Accused Products on the Amazon Retail Platform at a fraction of the price that the Plaintiff's company initially charged for Plaintiff's Covered Products.

42.    As presently advised, the Accused Products include, but are not limited to, the meat shredders identified on Schedule A by the listed Amazon Standard Identification Number ("ASIN").

43.    Defendants offer for sale and sell and have offered for sale and sold Accused Products including products associated with the ASINs listed on Schedule A.

11

FILED UNDER SEAL

## THE 'D611 PATENT

44.      On January 7, 2025, the USTPO duly and legally issued the 'D611 Patent, entitled "Meat Grinder," from Application No. 29/895,016 ("the '016 Application"), filed on June 15, 2023.

45.      The 'D611 Patent is presumed valid under 35 U.S.C. § 282.

46.      The 'D611 Patent claims patent-eligible subject matter.

47.      The claim of the 'D611 Patent is enforceable.

48.      Plaintiff is the exclusive owner of the 'D611 Patent and has the right to bring this suit for injunction and damages, and including the right to sue and recover all past, present, and future damages for infringement of the 'D611 Patent.

49.      Defendants are not licensed to the 'D611 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the 'D611 Patent.

50.      The claim of the 'D611 Patent is directed to a meat grinder. The Accused Products infringe the claim of the 'D611 Patent, as set forth in the section below and in the claim charts attached as Exhibit C. Representative Figures 7 and 8 of the '611 Patent are shown below.

12

**FILED UNDER SEAL**



FIG. 7

13

FILED UNDER SEAL



FIG. 8

## INFRINGEMENT OF THE 'D611 PATENT

51.    Defendants have purposely advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported and intend to continue to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import Accused Products to directly compete with Plaintiff that violate Plaintiff's rights in the 'D611 Patent. Defendants sell and have sold the Accused Products on the Amazon Retail Platform using the Accused Webstore. Defendants' infringement is causing irreparable harm to Plaintiff, thereby forcing Plaintiff to bring this lawsuit to protect her intellectual property.

14

**FILED UNDER SEAL**

52.    Defendants have infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, the claim of the 'D611 Patent under 35 U.S.C. § 271(a) by using, offering to sell, and/or selling in the United States and/or importing into the United States, meat grinders, which infringe the claim of the 'D611 Patent. On information and belief, Defendants continue to make, use, offer to sell, sell, and/or import the Accused Products. Accused Products include at least meat grinders that are covered by the claim of the 'D611Patent, either literally and/or the doctrine of equivalents.

53.    Exhibit C includes preliminary claim charts that demonstrates how Defendants' Accused Products infringe the claim 'D611 Patent. Plaintiff submits Exhibit C as examples of the ornamental features of Defendants' Accused Products that include similar claimed components. Plaintiff reserves the right to modify Exhibit C as part of Plaintiff's infringement contentions.

54.    The Accused Products are infringing devices and thus directly infringe 'D611 Patent claim.

55.    Defendants do not have a license or authority to import, make, use, or sell goods covered by the 'D611 Patent.

56.    Defendants continue to infringe the claim of the 'D611 Patent.

57.    Plaintiff has marked her company's Plaintiff's Covered Products with notices of the 'D611 Patent.

58.    As a result of Defendants' infringement of the 'D611 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined.

59.    Defendants, without authorization or license from Plaintiff, continue to infringe the claim of the 'D611 Patent in connection with the advertisement, offer for sale, and sale of the Accused Products, through, *inter alia,* its Accused Webstore. The Accused Webstore offers

FILED UNDER SEAL

shipping to locations in the United States, including Virginia, and, on information and belief, each Defendants have sold Accused Products into the United States, including Virginia. On information and belief, the Defendants are continuing to offer to sell and sell Accused Products at least via the Amazon Retail Platform.

60. On information and belief, Defendants have been willfully infringing the 'D611 Patent since at least as early as they each became aware of the 'D611 Patent. On information and belief, Defendants have no good faith defense to Plaintiff's infringement allegations. Instead, Defendants have intentionally continued their willful infringement.

61. Many sellers on the Amazon Retail Platform go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate their webstores. For example, on information and belief, sellers of counterfeit products regularly create new webstores on the Amazon Retail Platform using fictious names and addresses. Such registration patterns are one of many common tactics used by sellers of counterfeit products to conceal their identities and the full scope and interworking of their operations and to prevent their webstores from being disabled.

62. On information and belief, Defendants will continue to register or acquire additional webstore listings for the purpose of selling Accused Products that infringe the 'D611 Patent unless preliminarily and permanently enjoined.

63. Plaintiff has no adequate remedy at law for infringement of the 'D611 Patent.

## THE 'D289 PATENT

64. On June 24, 2025, the USPTO duly and legally issued the 'D289 Patent, entitled "Meat Grinder" from Application No. 29/952,669 ("the '669 Application"), filed on July 17, 2024.

65. The '669 Application is a continuation-in-part to the '016 Application.

16

**FILED UNDER SEAL**

66.    The claim of the 'D289 Patent is entitled to the priority date of the '016 Application, June 15, 2023.

67.    The 'D289 Patent is presumed valid under 35 U.S.C. § 282.

68.    The 'D289 Patent claims patent-eligible subject matter.

69.    The claim of the 'D289 Patent is enforceable.

70.    Plaintiff is the exclusive owner of the 'D289 Patent and has the right to bring this suit for injunction and damages, and including the right to sue and recover all past, present, and future damages for infringement of the 'D289 Patent.

71.    Defendants are not licensed to the 'D289 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the 'D289 Patent.

72.    The claim of the 'D289 Patent is directed to a meat grinder. The Accused Products infringe the claim of the 'D289 Patent, as set forth in the section below and in the claim charts attached as Exhibit D. Representative Figures 1 and 7 of the 'D289 Patent are shown below.



FIG. 1

17

**FILED UNDER SEAL**



FIG. 7

**INFRINGEMENT OF THE 'D289 PATENT**

73.    Defendants have purposely advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported and intend to continue to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import Accused Products to directly compete with Plaintiff that violate Plaintiff's rights in the 'D289 Patent. Defendants sell and have sold the Accused Products on the Amazon Retail Platform using the Accused Webstores. Defendants' infringement is causing irreparable harm to Plaintiff, thereby forcing Plaintiff to bring this lawsuit to protect her intellectual property.

74.    Defendants have infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, the claim of the 'D289 Patent under 35 U.S.C. § 271(a) by using,

18

FILED UNDER SEAL

offering to sell, and/or selling in the United States and/or importing into the United States, meat grinders, which infringe the claim of the 'D289 Patent. On information and belief, Defendants continue to make, use, offer to sell, sell, and/or import the Accused Products. Accused Products include at least meat grinders that are covered by the claim of the 'D289 Patent, either literally and/or the doctrine of equivalents.

75.     Exhibit D includes preliminary claim charts that demonstrates how Defendants' Accused Products infringe the claim 'D289 Patent. Plaintiff submits Exhibit C as examples of the ornamental features of Defendants' Accused Product that include similar claimed components. Plaintiff reserves the right to modify Exhibit C as part of Plaintiff's infringement contentions.

76.     The Accused Products are infringing devices and thus directly infringe 'D289 Patent claim.

77.     Defendants do not have a license or authority to import, make, use, or sell goods covered by the 'D289 Patent.

78.     Defendants continue to infringe the claim of the 'D289 Patent.

79.     Plaintiff has marked her company's Plaintiff's Covered Products with notices of the 'D289 Patent.

80.     As a result of Defendants' infringement of the 'D289 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined.

81.     Defendants, without authorization or license from Plaintiff, continues to infringe the claim of the 'D289 Patent in connection with the advertisement, offer for sale, and sale of the Accused Products, through, *inter alia*, its Accused Webstore. Each Accused Webstore offers shipping to the United States, including Virginia, and, on information and belief, each Defendant has sold Accused Products into the United States, including Virginia. On information and belief,

19

**FILED UNDER SEAL**

Defendants are continuing to offer to sell and sell Accused Products at least via the Amazon Retail Platform.

82.    On information and belief, Defendants have been willfully infringing the 'D289 Patent since at least as early as they each became aware of the 'D289 Patent. On information and belief, Defendants have no good faith defense to Plaintiff's infringement allegations. Instead, Defendants have intentionally continued their willful infringement.

83.    Many sellers on the Amazon Retail Platform go to great lengths to conceal their true identities and often use multiple fictitious names and addresses to register and operate their webstores. For example, on information and belief, sellers of counterfeit products regularly create new webstores on the Amazon Retail Platform using fictious names and addresses. Such registration patterns are one of many common tactics used by sellers of counterfeit products to conceal their identities and the full scope and interworking of their operations and to prevent their webstores from being disabled.

84.    On information and belief, Defendants will continue to register or acquire additional webstore listings for the purpose of selling Accused Products that infringe the 'D289 Patent unless preliminarily and permanently enjoined.

85.    Plaintiff has no adequate remedy at law for infringement of the 'D289 Patent.

**COUNT ONE**
**INFRINGEMENT OF THE 'D611 PATENT**
**(35 U.S.C. § 271)**

86.    The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

87.    Plaintiff is the owner of the 'D611 Patent, with all substantive rights in and to that patent, including the sold and exclusive right to prosecute this action and enforce the 'D611 Patent against infringers, and to collect damages for all relevant items.

20

FILED UNDER SEAL

88.    Defendants have infringed and continue to infringe, directly and/or under the doctrine of equivalents, the claim of the 'D611 Patent by using, selling, and offering to sell Accused Products in the United States and/or importing into the Accused Products in violation of 35 U.S.C. § 271(a).

89.    As evidenced in the claim charts of Exhibit C, the designs of Defendants' Accused Products are substantially similar to the design of the 'D611 Patent. The designs are so similar that they are nearly identical such that an ordinary observer, given such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs that would induce the purchaser to purchase the Accused Products believing Defendants' Accused Products to be substantially the same as the design protected and claimed in the 'D611 Patent.

90.    As a result of Defendants' infringement of the 'D611 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

91.    On information and belief, Defendants will continue to register or acquire webstore listings for the purpose of selling Accused Products that infringe the 'D611 Patent unless preliminarily and permanently enjoined.

92.    Defendants have infringed the 'D611 Patent through the above-listed acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct have caused Plaintiff to suffer irreparable harm resulting from the loss of lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

93.    Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

94.    Plaintiff is entitled to relief under 35 U.S.C. § 289.

21

**FILED UNDER SEAL**

95.     In addition, Plaintiff seeks, in the alternative and to the extent permitted by law, equitable restitution in the form of Defendants' ill-gotten profits derived from sales of the Accused Products, including funds held in, or flowing through, the Amazon seller accounts identified on Schedule A. These proceeds are directly traceable to the infringing sales and constitute a specifically identifiable res subject to equitable recovery.

## COUNT TWO
## INFRINGEMENT OF THE 'D289 PATENT
### (35 U.S.C. § 271)

96.     The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

97.     Plaintiff is the owner of the 'D289 Patent, with all substantive rights in and to that patent, including the sold and exclusive right to prosecute this action and enforce the 'D289 Patent against infringers, and to collect damages for all relevant items.

98.     Defendants have infringed and continues to infringe, directly and/or under the doctrine of equivalents, the claim of the 'D289 Patent by using, selling, and offering to sell Accused Products in the United States and/or importing into the Accused Products in violation of 35 U.S.C. § 271(a).

99.     As evidenced in the claim charts of Exhibit C, the designs of Defendants' Accused Products are substantially similar to the design of the 'D289 Patent. The designs are so similar that they are nearly identical such that an ordinary observer, given such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs that would induce the purchaser to purchase the Accused Products believing Defendants' Accused Products to be substantially the same as the design protected and claimed in the 'D289 Patent.

FILED UNDER SEAL

100.    As a result of Defendants' infringement of the 'D289 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

101.    On information and belief, Defendants will continue to register or acquire webstore listings for the purpose of selling Accused Products that infringe the 'D289 Patent unless preliminarily and permanently enjoined.

102.    Defendants have infringed the 'D289 Patent through the above-listed acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct have caused Plaintiff to suffer irreparable harm resulting from the loss of lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

103.    Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

104.    Plaintiff is entitled to relief under 35 U.S.C. § 289.

105.    In addition, Plaintiff seeks, in the alternative and to the extent permitted by law, equitable restitution in the form of Defendants' ill-gotten profits derived from sales of the Accused Products, including funds held in, or flowing through, the Amazon seller accounts identified on Schedule A. These proceeds are directly traceable to the infringing sales and constitute a specifically identifiable res subject to equitable recovery.

## COUNT THREE
## TRADE DRESS INFRINGMENT
### (15 U.S.C. § 1125(a))

106.    The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

**FILED UNDER SEAL**

107. Plaintiff owns protectable unregistered trade dress in the overall look and appearance of Plaintiff's Covered Products (the "Trade Dress"). The Trade Dress consists of the following non-functional design elements, in combination the Design Elements.

108. The Trade Dress is non-functional, as these design features do not affect the product's performance, durability, or manufacturing efficiency, and numerous alternative ornamental appearances are available for products serving the same function.

109. The Trade Dress has acquired secondary meaning. Plaintiff has continuously and exclusively sold products bearing the Trade Dress; invested in online advertising, influencer promotion, and social media marketing; and achieved high sales volume, positive customer reviews, and sustained top search placement on Amazon. As a result, consumers have come to associate the distinctive appearance of Plaintiff's Covered Products with Plaintiff as the source.

110. Defendants have copied the overall look and appearance of the Trade Dress in connection with the Accused Products, causing and likely to cause consumer confusion, mistake, and deception as to the source, sponsorship, or affiliation of the products, in violation of 15 U.S.C. § 1125(a).

111. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendants, and award the following relief:

A. **Patent Remedies ('D611 and 'D289 Patents)**

1. A judgment that each Defendant has infringed the 'D611 Patent and/or the 'D289 Patent.

2. An award of damages adequate to compensate Plaintiff for such

24

FILED UNDER SEAL

infringement, but in no event less than a reasonable royalty, pursuant to 35 U.S.C. § 284.

3. An award of Defendants' total profits from the sale of products found to infringe the Asserted Patents pursuant to 35 U.S.C. § 289.

4. A finding that Defendants' patent infringement was willful and an enhancement of patent damages up to three times under 35 U.S.C. § 284.

5. A judgment declaring this case exceptional under 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees and costs.

6. Pre-judgment and post-judgment interest as permitted by law.

**B. Trade Dress Remedies (15 U.S.C. § 1125(a))**

1. A judgment that Defendants have infringed Plaintiff's unregistered trade dress in violation of 15 U.S.C. § 1125(a).

2. Pursuant to 15 U.S.C. § 1116, a permanent injunction enjoining Defendants and all persons acting in concert with them from manufacturing, importing, advertising, marketing, promoting, offering for sale, or selling any products that incorporate, imitate, or are confusingly similar to Plaintiff's Trade Dress.

3. An award of Defendants' profits, Plaintiff's actual damages, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

4. An enhancement of the monetary award, consistent with the principles of equity and up to three times the amount of actual damages awarded, due to Defendants' willful and deliberate infringement, pursuant to 15 U.S.C. § 1117(a).

5. A declaration that this case is exceptional within the meaning of 15 U.S.C.

25

**FILED UNDER SEAL**

§ 1117(a), and an award of Plaintiff's reasonable attorneys' fees.

6. An order pursuant to 15 U.S.C. § 1118 directing Defendants to deliver up for destruction all infringing products, packaging, labels, promotional materials, and advertisements in their possession, custody, or control.

**C. Injunctive and Asset-Control Relief (Applicable to *Both* Patent and Trade Dress Counts)**

1. A temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendants from selling, offering for sale, or distributing the Accused Products or any confusingly similar products through the Accused Webstores or any newly established webstores.

2. An order directing Amazon.com and any financial institutions holding funds for Defendants to freeze and impound the specifically identifiable proceeds of Defendants' infringing sales, as the res of Plaintiff's claim for equitable restitution and disgorgement, pending final judgment.

3. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury as to all claims in this Verified Complaint.

Dated: November 6, 2025

Respectfully submitted,

By:    */s/ Brian M. Koide*
Brian M. Koide (VSB No. 46329)
bkoide@mwzb.com
MILLEN, WHITE, ZELANO & BRANIGAN, P.C.
2200 Clarendon Blvd., Suite 1400
Arlington, VA 22201
Tel: 703-243-6333
Fax: 703-243-6410
Attorneys for Plaintiff Xu'e Chen

26